## BUTTERFIELD *vs.* BUFFUM.

Where an individual has accused another of false swearing, and an action has been brought to recover the damage, the evidence to sustain the suit must be sufficient, from the words spoken, to show that the crime of perjury was charged.

Such words are to be taken according to their common import and acceptation, as understood by the hearer.

Where false testimony is charged as to any particular matter testified to in a suit, and nothing appears at the time to show but it may have been material to the issue in which it was given, or is otherwise known to the hearer, but is so understood and received by him; in such case the testimony will be regarded as material, and the words will be sufficient to show a charge of the crime of perjury.

Where such a charge has once been made, it cannot subsequently be avoided, in a suit for damage, by showing that the testimony in the particular complained of was immaterial.

THIS was an action on the case for slander, tried at the October term of the common pleas, on the general issue, and a verdict found for the plaintiff.

The declaration alleged that in a certain discourse had between the plaintiff and defendant of and concerning a suit in which one Wilbur was plaintiff against the defendant, tried at the April term of the superior court, in 1830,

and in which the plaintiff was a witness, the defendant, in the hearing of divers persons, uttered and published the following words: " You *did swear falsely, and I can prove it.*"

There were three counts in the declaration, one of which was founded on the charge appearing in the case below, as made in presence of Tyleston A. Barker. The plaintiff proved the words to be spoken, as alleged in the declaration. The witness by whom the words were proved to have been spoken, also testified that in the same conversation, but before the speaking of the words above mentioned, the plaintiff told the defendant that he heard he had accused him of taking a false oath. The defendant then asked him how he got his information. The plaintiff answered, from a good man close by. Defendant then said, " you did swear falsely, and I can prove it," and went immediately out of the house to the distance of about twenty rods, and returned with one Tyleston A. Barker. Defendant then told plaintiff that he had sworn falsely, in testifying " that he (said Barker, and Buffum, the defendant) *carried off the chest.*" Plaintiff then asked said Barker whether he, the plaintiff, did so swear, and Barker said it was so long ago he could not recollect. The same witness also testified that he had several times heard the defendant, in talking about the Wilbur suit, say, " that the plaintiff did swear falsely, and he lost the case by it." The said Tyleston A. Barker, who was brought in by the defendant, as before mentioned, testified that he did at that time state that the plaintiff, in the Wilbur suit, swore that he, said Barker and defendant, carried off the chest.

The defendant then contended that unless the said testimony of the plaintiff in said suit, Wilbur against the defendant, *was material in the trial of the issue joined* in that case, the words uttered by the defendant were not actionable, they not imputing to the plaintiff the crime of perjury ; and the defendant moved the court for liberty to introduce evidence of the facts to which the plaintiff testified on that occasion, and to shew that they were immaterial ;

which evidence the court ruled as inadmissible, on the ground that it was irrelevant; to which ruling the defendant excepted, and motion is made for a new trial, on the ground of misdirection of the court in matter aforesaid.

*Handerson*, and *Wilson*, for the plaintiff.

*Babbitt*, and *Vose*, for the defendant.

Upham, J.   In this case the defendant charged the plaintiff with swearing falsely, in a trial before the superior court, in testifying that the defendant and one Barker carried off a certain chest.

It does not appear that the defendant, in making the charge, always stated the particulars of the testimony complained of; but this was done in one instance, at least, and one of the counts in the declaration is founded on this allegation.

On trial, the defendant contended that these particulars were immaterial to the issue in which the testimony was given, and offered evidence to this point; but it was rejected by the court, and the case is now before us as to the propriety of this ruling.

The defendant contends that, if the testimony was immaterial, no perjury was imputed.   If such result would follow, the evidence offered in defence was improperly rejected. But is such the necessary result of immaterial testimony?

Had the witness been indicted for the crime of perjury, most clearly he could not have been convicted on immaterial testimony.   Such testimony could have affected neither one party nor the other on the trial, and no injury would have been done.   But here the case is different.   This plaintiff is not on trial for perjury, but charges the defendant with bringing against him a false accusation by words imputing perjury.   The injury done the plaintiff is clearly from the words as understood at the time.   No subsequent recantation of them, or explanation, can remedy the injury.

It is not only a rule of law, that slanderous words are to be construed according to their ordinary meaning and common acceptation,—2 *D. & E.* 473, *Carslake* vs. *Mappledoram*; 5 *East* 463, *Woolnorth* vs. *Meadows*; 9 *East* 93, *Roberts* vs. *Camden*; 6 *Cowen* 76, *Demarest* vs. *Haring*, but there are in the books various authorities to show that the understanding of the hearer is the rule to go by. 1 *Viver* 507; *Hob.* 268, *Fleetwood* vs. *Curly.* Lord Hobart says, the slander and damage consist in the apprehension of the hearers; and in *Gilbert's Cases in Law and Equity* 117, the rule is laid down that the words shall be taken in the sense in which the hearers understand them.

If this be so, the hearer can ordinarily know nothing of what transpired on a former trial. He only listens to the charge against the plaintiff, that he had sworn falsely; and when the particulars are specified, unless they are manifestly immaterial, knows not but the whole case may have turned on the testimony complained of. The slander is thus spread abroad. Perjury is imputed, and is so understood and received.

It is in vain to say that on a subsequent trial for the slander, which may not take place until years afterwards, such an explanation may be given to the words, by extrinsic testimony, as to do away the imputation of perjury. Such explanation might never reach the hearers who had listened to the charge. An imputation of perjury once made intelligibly to a by-stander should not await such tardy correction. It can neither purge the wrong, or palliate its effect.

On this point, however, the authorities are conflicting and contradictory. In *Sibley* vs. *Marsh*, 7 *Pick.* 83, the case did not turn on the impression which would necessarily be received by the hearer, but evidence was admitted to show that the testimony alleged to be false, was immaterial to the issue, without showing any circumstance from which the hearer at the time might infer that such testimony was immaterial.

To the same point is the case of *Wood* vs. *Price*, 12 *Wend.* 500, though it was holden in that case that where the charge of false swearing was general, the law would presume some part of the testimony was material; but where the charge was confined to a particular fact sworn to, it was said such presumption ought not to be indulged, and it must be made to appear affirmatively by the plaintiff that the fact was material to the issue. See, also, 13 *Johns.* 81, *Chapman* vs. *Smith* ; 20 *Johns.* 349, *Crookshanks* vs. *Gray* ; 9 *Cowen* 31, *Bullock* vs. *Coon;* 1 *Wend.* 477, *Rouse* vs. *Ross;* 5 *Johns.* 188, *Brooker* vs. *Coffin.*

These cases depend on the principle, that to constitute slander the charge must be such as, if true, will subject the individual to a conviction for a crime, and that no conviction for perjury can be had unless it be first shown that the false testimony charged was material to the issue.

We do not contest this principle, but merely the propriety of its application in the mode contended for. We contend that the perjury must be clearly imputed, in such a manner that nothing appears to contradict the charge, or to induce the hearer to believe that the testimony complained of related to matter immaterial to the issue. The individual undertaking to impute perjury to another must be presumed to know what was material testimony ; and when he charges false testimony in a witness as to a matter which clearly might form a material issue in a suit, and gives currency to the charge in that form, it is such evidence of perjury, or at least of a charge of perjury, as must forever estop the slanderer from denying it.

In this sense the testimony may be regarded as material, and its materiality must thus appear in the charge.

There are instances where false testimony may be alleged against another, as to a particular matter on trial, where the whole is a fabrication ; where no such testimony was given, or trial had. The question as to the materiality of the testimony in such cases could only be settled from its apparent

character, as made in the accusation, and from the ordinary and common acceptation of the terms used. Unless this be the rule of law in such cases, there would be no remedy; and yet it is apparent that where the whole charge is a fabrication, it requires the redress of law as clearly as a charge of theft of a particular article, where no such article was stolen. No other rule than the one laid down by us would reach such a charge of perjury; and we contend that this rule is applicable to all cases.

In this view of the law we are sustained by authorities entitled to much weight.

The case of *Power* vs. *Price*, 12 *Wend.*, above cited, underwent the revision of the Court of Errors, and is again reported in 16 *Wend.* 482. In the opinion delivered in the case by Chancellor Walworth, he directly controverts the doctrine of 12 *Wendell.* In remarking on the facts in the case, the chancellor observes: " that although the defendant ' charged the plaintiff with having sworn falsely in a partic- ' ular part of his testimony, yet as there was nothing stated ' from which the hearers could suppose that this part of the ' testimony had nothing to do with the suit in which he ' was sworn as a witness, the imputation of perjury was ' just as plain as if he had said he had sworn falsely on the ' trial, without explaining wherein he had sworn to a lie." He says farther : " The hearers would have no reason to ' suppose that the witness had been sworn and examined as ' to facts which were wholly immaterial to the cause, or ' that the matters as to which the defendant alleged he had ' sworn false, were of that description ;" and he puts it to the members of the court to say " whether, if one man, in ' speaking of the testimony of another, upon a trial which ' had previously been had, should say that the witness had ' sworn false, or lied, or sworn to what was not true, upon ' such trial, in relation to a particular fact, they would not, ' in the absence of any thing to show that such fact was

'not material in the suit, naturally presume and understand
'that he intended to impute perjury to the witness."

In *Coleman* vs. *Godwin*, 3 *Doug*. 91, Buller, justice, says,
the meaning of words is to be gathered from their common
import, and not from any technical sense; and Mr. Justice
Ashurst remarks, that "the effect of the words upon the
'hearers is to be considered; and the determinations in the
'old books, by which the slanderer has been permitted to
'escape the legal consequences of the obvious and natural
'meaning of his slanderous expressions, are a disgrace to
'the law. If a party charges a witness with having sworn
'false in relation to a particular fact in a cause, which fact
'would not necessarily be immaterial and irrelevant, the
'natural effect of the words spoken is to convey to those
'who hear them the impression that the witness has com-
'mitted perjury."

These cases, however, only go to the extent that, where
such is the apparent character of the charge, perjury shall
be considered as imputed, until the contrary appears; the
effect of which is merely to shift the burthen of proof from
the plaintiff to the defendant, and would go but little way
to remedy the evil, as shown to exist in slanders of this de-
scription. Such decision was sufficient for the cases before
them. The reasoning of the court, however, goes much
further, and sustains us fully in the views we have taken as
to the nature and effect of such accusations.

The case of *Cook* vs. *Bosworth*, 12 *Wend*. 48, goes to
sustain to some extent these decisions, and to show that the
rule on this subject is not fully settled in New-York. It
was there holden that if the defendant *intended* to impute
the crime of perjury, he was liable, without submitting the
question to the jury to determine how the words were un-
derstood by the hearers. Chief Justice Savage remarks in
the case, "that the defendant ought not to be excused, *on
the ground that perjury could not have been committed*, in-
asmuch as it would seem that perjury was directly imputed,
and must have been so understood."

These authorities we think show in principle the true rule applicable to cases of this description : That where false testimony is charged against a witness, as to any particular matter, and nothing appears at the time to show but it may have been material to the issue in which it was given ; or is otherwise known to the hearer, but it is so received and understood by him, in such case the defendant will be regarded as designedly imputing perjury ; and, having once given the imputation to the world, he cannot subsequently avoid the slander, by showing that the testimony was immaterial.

We have, then, merely to apply these principles to the case before us.

Was there any thing in the charge, as here made, to indicate that the testimony complained of was immaterial ? The accusation of the defendant was that "the plaintiff swore falsely, and he could prove it ;" that he "swore falsely in testifying that the defendant and one Barker carried off a certain chest ;" and that " by his false swearing he lost his case."

From the words here used, nothing appears to raise any doubt as to the materiality of the testimony, or of the design of the defendant to impute a crime to the plaintiff ; neither is any thing disclosed as within the knowledge of the hearers, to show an understanding on their part different from what would be inferred from the common and ordinary acceptation of the language used.

Such being its plain, evident meaning, all that is necessary to show a charge of the crime of perjury, is made out. The slander has been spread abroad to the public, and the whole injury has been perfected.

It is too late now to make a new charge to obviate the former, or to give such a gloss or construction to it, by new matter offered in evidence, as to show that had sufficient light been communicated to the hearers, at the time, as to the matter in issue in the former trial, a different impression

might have been received. Such testimony does not in any manner meet the time, occasion, or substance of the wrong done, and was therefore properly rejected. It is a mere attempt, at a very late hour, to avoid the penalty of the slander, without manifesting either penitence for the injury, or obviating its effects.

*Judgment for the plaintiff.*