## TENNEY *vs.* CLEMENT.

In an action of slander, for charging the plaintiff with the crime of murder, it is not necessary to allege or prove the death of the person said to be murdered.

The action may be maintained, though the person said to be murdered is still living ; if his existence was not known to those in whose presence the defamatory words were spoken. Where the words set forth were, that A. was murdered, and the plaintiff was concerned in it, and had a hand in it, *innuendo*, meaning that the plaintiff aided and assisted in the commission of the murder—*Held* sufficient.

THIS is an action on the case for slander, on the following declaration : For that whereas the plaintiff is a good, true, honest and just citizen of this state, and from the time of his birth hath hitherto always behaved and governed himself as such ; and during all that time hath been held, esteemed and reputed to be of a good name, character and reputation, as well among a great number of his fellow-citizens, as among all his neighbors and acquaintances ; and during all that time hath never been guilty of, or justly suspected of having been guilty of murder, or any kind of violence, or any other hurtful or disgraceful crime : Yet the said Clement, well knowing the premises, but contriving and maliciously intending to hurt, injure, degrade and wholly destroy the plaintiff in his aforesaid good name, character and reputation, and to cause it to be believed that he had been guilty of the atrocious crime of murder, and to cause him, the plaintiff, to be arrested and prosecuted for the crime of murder ; and to subject him to the pains and penalties by law provided against murder, did, on the first day of November, A. D., 1834, at Hudson, in presence of divers good citizens of this state, in a certain conversation then and there had in their presence and hearing, respecting one Samuel A. Wason being murdered at Tenney's tavern, in said Hudson, a tavern heretofore kept by one James Tenney, and where the plaintiff has always resided, did loudly and publicly speak, utter and repeat the following false, malicious and scandalous words of and

Tenney v. Clement.

concerning the plaintiff, to wit. : I believe he (meaning the said Wason) was murdered there, (meaning at said Tenney's tavern, in said Hudson) and I think James (meaning the said James Tenney, brother of the plaintiff ) killed him ; (meaning the said Wason) and Silas, (meaning the plaintiff ) Capt. Baldwin and Moody Morse were concerned with him, (meaning that the plaintiff, said Baldwin and Morse were concerned with the said James in murdering the said Wason.) And the said David Clement, of his further malice against him, the said Silas Tenney, afterwards, to wit., on the second day of November, A. D., 1834, at said Hudson, in a certain other conversation respecting the said Samuel A. Wason being murdered at said Tenney's tavern, in said Hudson, a tavern kept as aforesaid in said Hudson, and known by the name of Tenney's tavern, and of and concerning the murder of the said Wason, falsely and maliciously spoke, asserted, and with a loud voice published and proclaimed these other false, feigned, scandalous and opprobrious words, of and concerning the said Silas Tenney, in the presence and hearing of divers faithful citizens of this state, and friends and neighbors of him, the said Silas Tenney, then and there present and hearing the same, to wit. : I believe Wason (meaning the said Samuel A. Wason) was murdered at the tavern ; (meaning at the said Tenney tavern) ; I have no doubt of it, (meaning he had no doubt said Wason was murdered at said tavern) ; I do believe it ; and I have no doubt that Silas (meaning the plaintiff ) had a hand in it ; (meaning that the plaintiff aided and assisted in murdering the said Wason.) And also the said David Clement, of his further malice against him, the said plaintiff, afterwards, to wit., on the third day of November, A. D., 1834, at Hudson aforesaid, in a certain other conversation and discourse respecting the said Samuel A. Wason being murdered at the Tenney tavern, in said Hudson, a tavern kept as aforesaid in said Hudson, and known by the name of the Tenney tavern, and of and concerning the said Wason being murdered, falsely and maliciously spoke, asserted, and

with a loud voice published and proclaimed these other false, feigned, scandalous and opprobrious words of and concerning the plaintiff, in the presence and hearing of divers good citizens of this state, and in their hearing, to wit. : I have no doubt Wason (meaning the said Samuel A. Wason) was murdered at the tavern ; (meaning the said Tenney tavern, in said Hudson) ; I believe it ; (meaning that he believed said Wason was murdered at said tavern) and I believe the Tenneys (meaning the plaintiff and his brother, one James Tenney) murdered him, (meaning said Wason) and you (meaning one James Smith) would believe it if you (meaning said Smith) knew as much about it (meaning the murdering of the said Wason) as I do. I was down there (meaning that he was at said tavern) one night, and I heard Zadock P. Wilson and Silas Tenney (meaning the plaintiff ) talking together in the horse shed ; and I heard them (meaning said Wilson and the plaintiff ) say enough to satisfy me that he (meaning the said Wason) was murdered there : (meaning that said Wason was murdered at said Tenney's tavern,) and that Wilson (meaning the said Zadock P. Wilson) had a share of the money with them : (meaning that said Wilson and one James Tenney and the plaintiff shared and had divided among them the money of the said Wason, so murdered by the plaintiff and the said James Tenney.)

And the said David Clement, on the 11th day of May, 1835, at said Hudson, of his further malice against the plaintiff, in a certain other conversation then and there had between the plaintiff and the said David Clement, of and concerning the murder of the said Samuel A. Wason, in presence and hearing of divers good citizens of this state, did at said Hudson, on the said 11th day of said May, utter and speak, in a loud voice, to, of and concerning the plaintiff, these other false, malicious and scandalous words, to wit. : You (meaning the plaintiff ) ought to be hung. I never said you (meaning the plaintiff ) killed him, (meaning the said Wason) and I could prove it ; but I do not doubt you (meaning the plain-

tiff) did; (meaning that the plaintiff did kill the said Wason.) I believe you (meaning the plaintiff) did; (meaning that the plaintiff did kill said Wason) and you (meaning the plaintiff) ought to be hung. By means of the speaking and publishing of which said several false, scandalous and defamatory words, and of the said several false, scandalous and malicious statements and charges, the plaintiff is further greatly injured and prejudiced in his good name, character and reputation aforesaid, and hath been suspected and believed to have been guilty of the atrocious crime of murder; and has been liable to be prosecuted and indicted for murder; and has likewise further undergone great pain, distress and trouble, both of body and mind, and hath been greatly injured and prejudiced.

To this declaration the defendant pleaded the general issue, and the statute of limitations.

On trial before the jury it appeared from the plaintiff's opening, and was proved, that Samuel A. Wason, the person referred to in the plaintiff's declaration, previous to the last of November, 1830, came, on one Sunday, to the tavern in Hudson kept by James Tenney, the plaintiff's brother, and where the plaintiff boarded, and then suddenly disappered, and was neither seen or heard of, by any of his friends, or any person in the vicinity, until a short time before the commencement of this suit, which was the 5th of June, 1835, when he returned after his mysterious disappearance— much suspicion having prevailed in the mean time that he had been murdered by some one; and thereupon the defendant's counsel moved the court that a nonsuit be entered, on the ground that the action in its present form could not be sustained on such a state of facts. But the court overruled the motion, and proceeded in the trial.

The jury returned a verdict of not guilty on the two last counts in the declaration, and of guilty within two years next before the commencement of the suit, on the two first counts.

The defendant's counsel excepted to the above ruling of the court, and now move to have the verdict set aside and a nonsuit entered.　They also move in arrest of judgment.

*C. H. Atherton,* for the defendant.　Whether words said to be actionable, *per se,* are in fact actionable, often depends upon extrinsic circumstances ; as, where one is charged in terms with theft, forgery, robbery or perjury, a reference to extrinsic circumstances often determines whether such words are actionable.　*Blanchard* vs. *Fisk,* 2 *N. H. R.* 398 ; *Norton* vs. *Ladd,* 5 *N. H. R.* 203 ; *Jackson* vs. *Adams,* 2 *Bing. N. C.* 402 ; *Dexter* vs. *Tabor,* 12 *Johns. R.* 239 ; 2 *Cro.* 65, 204, *Alexander* vs. *Alexander ;* 9 *Wend.* 141, *Van Ransalear* vs. *Dole ;* 1 *Johns. Cases* 279, *Sayer* vs. *Jewell ;* 12 *Wend.* 135, *Sibbley* vs. *Marsh ;* 7 *Pick. R.* 38, *Bullock* vs. *Koon ;* 4 *Wend.* 531.

On the charge of murder, where the person alleged to have been murdered is alive, there is a long and uncontradicted current of authorities, showing that the words are not actionable.　*Instructer Clericalis, vol.* 2, *p.* 35 ; *Dyer* 236 ; *Stiles* 227 ; *Talbot* vs. *Case, Cro. Eliz.* 823 ; *Snagg* vs. *Gee,* 4 *Rep.* 16, 9 ; 8 *Wentworth* 272 ; *Bull. N. P.* 5.

*Farley,* for the plaintiff.　To the point that the plaintiff need not in his declaration aver that a murder has been committed, cited *Cro. Eliz.* 569, *Webb* vs. *Poor ; Cro. Eliz.* 823, *Talbot* vs. *Case ; Cro. Charles* 489, *Wilner* vs. *Hold ; Cro. Charles* 177, *Shalmer* vs. *Foster & ux. ; Cro. Charles* 318, *Green* vs. *Lincoln ; Anonymous Case, Ibid.,* 337 ; 2 *Stra.* 1130, *Rives* vs. *Lite ; Bar. Abr., Slander, B,* 2 ; 1 *Caines' R.* 348, *in notes ; Starkie on Slander,* 71 to 74. That the action may be sustained, although the plaintiff admit on trial before the jury that the person with whose murder the defendant charged him is still alive, *Starkie on Slander* 71, 74 ; 2 *Kent. Com.* 16.

Tenney *v*. Clement.

WILCOX, J. The facts in this case are simply these : In November, 1830, Samuel A. Wason came to a tavern in Hudson, where the plaintiff boarded, and then suddenly disappeared, and nothing was seen or heard of him till June, 1835, when he returned. While Wason was thus absent the defendant said in substance that he had no doubt that Wason was murdered at the tavern, and that the plaintiff had a hand in it. On these facts appearing, the defendant's counsel moved that a nonsuit be entered, on the ground that an action for slander could not be sustained on such a state of facts. But the court refused the motion ; and the trial proceeded, and resulted in a verdict for the plaintiff on the two first counts in his declaration.

Words are in some instances actionable *per se ;* and in other cases an action will not lie without alleging and proving special damage.

Words imputing to another a crime punishable by law, are of themselves actionable. By such a charge not only is the plaintiff's reputation injured, but he is exposed to a public prosecution and the penalties of the law.

There is a class of cases where the slanderous words in terms impute to the party larceny, robbery, perjury, or some other indictable offence, and yet are held not actionable ; because, taking them altogether, they do not, in legal acceptation, contain any such charge ; as, where the defendant had said of the plaintiff that he had stolen a pile of unsettled accounts ; or his standing trees ; or his sable ; none of which can be the subject of larceny, and the taking whereof amounts only to a trespass. 2 *N. H. Rep.* 398 ; 5 *ditto* 203 ; 12 *Johns. R.* 239 ; and so of the case cited from 1 *Johns. Cas.* 279.

An action will not lie in these cases, because the hearers must have understood, from the words themselves or from their knowledge of the transaction referred to, that no crime was in fact imputed to the plaintiff. If, however, the defendant's language, in its ordinary acceptation, imputed a crime,

he cannot defend himself on the ground that he referred to a transaction in which no crime was committed, unless he also shew that those who heard the charge knew also the character of the transaction ; that no crime was committed ; and that this was the matter spoken of. What the law regards is, the effect upon the mind of the hearer. It supposes him capable of making the true legal inference from the language used ; and if he must have understood that a crime was imputed to the plaintiff, the words are actionable, *per se.*

The supreme court in New-York appears to have made an exception to this rule. They have held that, where the plaintiff is charged with perjury, the words are not actionable if it appear on the trial that the plaintiff's testimony, which is said to be false, was irrelevant to the issue. 12 *Wend.* 500, *Powers* vs. *Price ;* see 16 *Wend.* 482, *S. C.* If, when the charge was made, it was made and so understood by the hearers in reference to testimony wholly immaterial, the case would fall within the principle before adverted to ; no action would lie, because the hearers could not correctly understand that perjury was imputed. But if perjury was in terms charged, and it was not known to the hearers that the testimony was irrelevant, we do not agree that the defendant can be exonerated by afterwards shewing that the charge related to testimony which was wholly irrelevant to the issue ; and it was so decided in *Butterfield* vs. *Buffum,* 9 *N. H. Rep.* 156.

In the present case the words spoken charged the plaintiff with being accessory to the crime of murder. There is nothing in the language to qualify this imputation ; and, although it now appears that Wason was living, that fact was not known to the defendant or to those who heard his charge against the plaintiff ; but, on the contrary, his sudden disappearance was wholly unexplained, and had excited strong suspicions that he was murdered.

It has been held, in quite a number of cases, when the de-

fendant is sued for charging the plaintiff with the crime of murder, that the plaintiff must aver the death of the person said to be murdered. The later authorities dispense with this averment, on the ground that the death will be presumed ; but they still seem to hold that, if the person is in fact living, it is a good answer to the action. *Cro. Eliz.* 823 ; 4 *Coke R.* 16, *a ; Cro. James* 215 ; *Cro. Car.* 489 ; *Buller N. P.* 5.

In *Snagg* vs. *Gee,* 4 *Rep.* 16, *a*, the plaintiff shewed in his declaration that the defendant had a wife yet living, and that the defendant said of the plaintiff, Thou hast killed my wife. On demurrer, the defendant had judgment ; for, the wife being alive, it appears that no murder of her could have been perpetrated ; and so the plaintiff cannot be in jeopardy.

Upon this case it was said by chief justice Popham, that " for his part he never was, nor yet is satisfied with the law of Snagg's case, in the Fourth Report ; for, whether she be living or dead, the scandal is the same to the bystanders, who, perchance, did not know that she was living ; and so the scandal was never the less." *Winch* 40 ; *Auditor Carle's case,* 20 *Jac.* 1. And about the same time, in a case where the charge was, that the plaintiff had perjured himself in a suit in such a court, it was objected, in arrest of judgment, that the fact that a suit had been prosecuted did not sufficiently appear ; and, if none had been instituted, the plaintiff could not have been exposed to legal penalties ; but the court gave judgment for the plaintiff, saying, " It is not material whether there be a suit or not, for the plaintiff is scandalized, and those who hear the speech will not enquire whether there was a suit or not." 2 *Rol. R.* 471, Yates' *case.*

The earlier cases in the action of slander are full of absurdities and contradictions ; and are indeed of very little authority. Thus a rule at one time prevailed, that in deciding upon the defamatory character of words spoken, the mildest interpretation of which they were susceptible should be given to them.

In the case above cited from *Cro. James* 184, the words were: "Sir Thomas Holt struck his cook on the head with a cleaver, and cleaved his head; the one part lay on one shoulder, another part lay on the other." After verdict for the plaintiff, judgment was arrested, because it did not appear that the cook was killed.

Such decisions, however numerous, cannot be sustained at the present day.

Starkie, in his treatise on Slander, page 71, puts the question on its true ground. He says: "The actionable quality of words spoken must depend upon the fact, whether the hearers are aware that the person alleged to have been murdered was really alive. If they did not know the fact, then all the consequences, the probability of which renders such a charge of murder in any case actionable, may follow: since several melancholy instances may be cited, where an accused person has suffered for the murder of one who has survived him." See, also, 16 *Pick. R.* 4.

It is said there is no legal probability of damage, when the murder imputed has not been committed. The same objection might be made in all cases of innocence, as the law does not contemplate or intend that an innocent person should suffer. This would be a fatal objection to all actions for slanderous words imputing a crime, for in all such cases the plaintiff's claim is on the ground of the entire falsity of the charge, and of his own innocence.

It is moved, in arrest of judgment, that the words as set forth do not charge the plaintiff with having been accessory to the murder.

In the first count the words are, that Wason was murdered by James Tenney, and the plaintiff and others were concerned with him; meaning that the plaintiff and others were concerned with said James in murdering said Wason.

In the second count the words set forth are, that Wason was murdered at the tavern, and the plaintiff had a hand in it; meaning the plaintiff aided and assisted in murdering the

Tenney *v.* Clement.

said Wason. We think these counts and innuendoes are sufficient. To say that a man is concerned in an act, or had a hand in it, is, in common understanding, to charge him with having been engaged as a party to the act, and as aiding and assisting in its performance; and it is alleged in the innuendoes that the defendant so meant and intended. There must, therefore, be

*Judgment on the verdict.*